## SETTLEMENT AGREEMENT
## AND
## GENERAL RELEASE OF ALL CLAIMS

## I.   RECITALS AND DEFINITIONS

A. **Parties.** This Settlement Agreement and General Release (hereinafter, "Agreement") is made and entered into by and between plaintiff Patrick Bass ("Bass"), and defendant City of Alhambra and the Alhambra Police Department ("APD" or "the Department") ("collectively, "Defendants"). Hereinafter, Bass and Defendants are collectively referred to as "the Parties."

B. **Scope of This Agreement.** This Agreement resolves the lawsuit initially filed on November 20, 2008, and a first amended complaint filed on September 29, 2009, entitled *Patrick Bass, individually and on behalf of the class of similarly situated individuals, v. City of Alhambra, et al.*, United States District Court of the Central District of California Case Number CV08-07660 ABC (JWJx) (hereinafter, "the Action"), in which Bass alleges that Defendants failed to provide him and other deaf and hard of hearing ("D/HH") persons with effective communication, as required by federal and state law. At the time of this Agreement, the putative class had not been certified by the Court. By entry into this Agreement, the Parties intend to resolve all claims that were or could have been raised in the Action by Plaintiff Bass only.

C. **Goals of This Agreement.** The Parties have determined that the Action can be resolved without further litigation. In order to avoid the time and expense of further litigation and in order to continue its efforts to comply fully with the Americans with Disabilities Act (42 U.S.C. § 12131, et seq.), the Rehabilitation Act (29 U.S.C. §794, et seq.) and applicable state disability rights statutes, the City agrees to enter into this Agreement. This Agreement is not, nor shall it be construed, as an admission by the City of any wrongdoing or liability in the action. This Agreement is not, nor shall it be construed as, a statement that the City is not currently ensuring that it provides effective communication to the deaf and hard of hearing community.

D. **Effective Date of Agreement.** This Agreement shall become effective as of the date of the final signature executing the Agreement ("Effective Date").

E. **Definitions.**

> 1.   "Effective Communication" means communication with persons with disabilities that is as effective as communication with others. Effective communication is achieved by furnishing appropriate auxiliary aids and

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 1 of 12*

services where necessary to afford an individual who is deaf or hearing
impaired an equal opportunity to participate in or benefit from the
services, programs, or activities of a public entity. *See* 28 C.F.R. §
35.160.

2.  "Auxiliary Aids and Services" are those auxiliary aids and services that
are necessary to ensure (1) effective communication between deaf and
hearing impaired individuals and APD personnel, and (2) that
individuals who are deaf and hard of hearing have an opportunity to
participate in and benefit from services that is equal to the opportunities
available to persons without disabilities. Various types of
communications aids are available and appropriate depending on the
facts and circumstances of each particular encounter between APD and
a deaf or hearing impaired individual. These auxiliary aids and services
include the use of a notepad and pen or pencil to exchange written
notes; use of an assistive listening system or device to amplify sounds
for persons who are hard of hearing; use of a teletypewriter (TTY); use
of a qualified oral or sign language interpreter; or use of gestures or
visual aids to supplement oral communication, and other similar aids
and services defined by 28 C.F.R. § 35.104.

3.  "Qualified Interpreter" refers to a sign language or oral interpreter who
is able to interpret effectively, accurately, and impartially, both
receptively and expressively, using any necessary specialized
vocabulary (in this case, terms related to law enforcement).
Accordingly, an interpreter must be able to sign to the deaf individual
(or interpret orally to the person who does not use sign language) what
is being said by the hearing person and to voice to the hearing person
what is being signed or said by the deaf individual. The interpreter must
be able to interpret in the language the deaf person uses (e.g. American
Sign Language or Signed English) and must be familiar with terms and
phrases commonly used within law enforcement, including those used
during booking and detention. Additionally, although a qualified
interpreter may be certified, a certified interpreter is not necessarily
qualified, if he or she is not a good communications match for the deaf
person (e.g., where the deaf person uses Signed English and the
interpreter uses American Sign Language) or for the situation (e.g.,
where the interpreter is unfamiliar with the necessary specialized
vocabulary). See 28 C.F.R. § 35.160.

4.  "Telecommunication Device for the Deaf" or "TDD" means a device

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 2 of 12*

that is used with a telephone or computer to communicate with persons who are deaf or hard of hearing by typing and reading communications. For purposes of this Agreement, a video relay service may be used as a TDD.

NOW, THEREFORE, FOR AND IN CONSIDERATION OF the mutual covenants and conditions set forth herein, the Parties agree as follows:

## II. AGREEMENT

A.      **Statement of Policy**.  The Department shall affirm its policy to provide Effective Communication to deaf and hard of hearing persons in compliance with the Rehabilitation Act ( 29 U.S.C. § 794, *et seq.*), American with Disabilities Act (42 U.S.C. § 12131, *et seq.*), and applicable state disability rights statutes (Gov. Code § 11135, Gov. Code § 54, Cal. Civ. Code § 51, including any and all amendments to these statutes or implementing regulations.

1.      **Implementation of Written Policy**.  Within 45 days of the Effective Date of this Agreement, the APD shall implement a written policy entitled "Communicating with People Who are Deaf or Hard of Hearing," a copy of which is attached to this Agreement as Exhibit "A."

2.      **Deaf/Hard of Hearing Communication Card.**  Within 45 days of the Effective Date of this Agreement, the APD shall prepare a communication card for officers to present to persons who are D/HH with whom they interact.  The communication card shall contain the International Sign Language symbol and shall inform recipients that the APD is committed to providing Effective Communication to D/HH persons.  The card shall describe how and when to request a Qualified Interpreter from the Department.  A copy of the card shall be provided to Plaintiff's counsel within 10 days of its issuance.

3.      **Provision of Auxiliary Aid and Service.**  In determining what type of Auxiliary Aid and Service is necessary to provide Effective Communication, the Department shall:

a. Provide an opportunity for individuals with disabilities to request the Auxiliary Aids and Services of their choice;

b. Give primary consideration to the person's request; and honor the request unless:

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 3 of 12*

        i.        other means of Effective Communication exist; or

       ii.       use of the means requested would result in a
             fundamental alteration of the Department's programs
             and services; or

      iii.      use of the means requested would result in an undue
             financial and administrative burdens.  *See* 28 C.F.R.
             Pt. 35 App. A (Section 35.160 General).

c.  The decision that a particular request for Auxiliary Aids and
Services would result in a fundamental alteration of the
Department's programs and services or in undue financial and
administrative burdens must be made by the Chief of Police or his
or her designee after considering all the resources available for use
in the funding and operation of the Department and must be
accompanied by a written statement of the reasons for reaching
that conclusion.  *See* § C.F.R. 35.164.  The written statement shall
be promptly provided to the individual(s) who made the request for
Auxiliary Aids and Services.

4.    **Provision of Qualified Interpreters.**  The Department will offer
Qualified Interpreters to persons who are deaf or hard of hearing
pursuant to paragraph II.A(3) of this Agreement, and when it becomes
necessary to advise a D/HH person regarding their *Miranda* rights,
absent exigent circumstances.

5.    **Supply of Qualified Interpreters**

a.  Within 45 days of the Effective Date of this Agreement, the
Department will contract with one or more reputable sign language
interpreter agencies ("Interpreter Agency") who have Qualified
Interpreters readily available on an on-call basis 24 hours per day,
seven days per week, year round.  Qualified Interpreters must be
available within one hour when a request is made by the
Department.

b.  The Department's contract with its Interpreter Agencies shall
provide, *inter alia,* that the Interpreter Agency shall have available
Qualified Interpreters of American Sign Language and Signed
English on an on-call basis 24 hours per day, 7 days per week, year
round, and who are available within one hour of the Department's

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 4 of 12*

request.

    c.  If the Department determines that the Interpreter Agency is not maintaining a performance level adequate to fulfill the foregoing provisions, or otherwise is not adequate to serve the Department's interpreting needs, the Department shall contract with at least one other Interpreter Agency as soon as possible, and under all circumstances, the Department will use its best efforts to ensure that Qualified Interpreters remain on-call and available at all times. Defendants shall use its best efforts to ensure no lapse in Interpreter Agency contracts.

6.    **Provision of Telecommunication Devices for the Deaf (TDD).** Within 90 days of the Effective Date of this Agreement, the Department shall provide Plaintiff's counsel with verification that it has installed a Telecommunication Devices for the Deaf at all offices and divisions that directly interact with the public. Each station shall ensure that all employees receiving phone calls from the public, and/or facilitating outgoing phone calls by persons who are deaf or hard of hearing, receive training and/or instruction on the use of TDDs.

7.    **Training of Officers and Employees**. The Department shall supplement, revise and/or update its training programs to educate its officers and employees about providing Effective Communication to D/HH persons consistent with this Agreement and to ensure equal access to programs, services, and activities.

    a.  **Training Bulletin.** Within 45 days of the Effective Date of this Agreement, the Department shall issue a training bulletin, an exemplar of which is attached as exhibit "B" to this Agreement, that will address the Department's duty to provide Effective Communication to D/HH persons. The Department shall provide a copy of the training bulletin to Plaintiff's counsel within 10 days of issuance.

    b.  **Lesson Plan Materials.** The Department shall develop lesson plans that will set forth the curriculum for officer training concerning the duty to provide Effective Communication when coming in contact with D/HH persons.

    c.  **Training Schedule.** The Department will continue to generate a

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 5 of 12*

roll call training schedule to ensure all officers and employees receive training on the policy addressing Effective Communication with people who are D/HH. The Parties recognize that it may be impossible to guarantee that every officer receive the training during a given training cycle, but the Department will make every reasonable effort to provide the training required by this Agreement to all officers and employees within six (6) months of the Effective Date of this Agreement.

d. **Continuing Education for Deployed Personnel (CEDP).** The Department will include a review of the policy, "Communicating with People Who are Deaf or Hard of Hearing," as well as the Department's operational procedure for officers to request a Qualified Interpreter in its regularly scheduled CEDP programming.

e. **Command Staff Training.** The Department shall make a presentation to existing Command Staff at a mandatory Command Staff meeting, date to be determined by the Department, but within six months of the Effective Date. The presentation shall include a mutually agreed upon representative of the deaf and hard of hearing community. Any Command Staff not present at the meeting shall receive a copy of the training materials as soon as practicable thereafter, but no later than 2 weeks after the meeting. **[DMA to confirm with Chief re: representative from community to present]**

8. Consistent with the Department's policy of providing Effective Communication to members of the public, the Department shall, consistent with its practices, take appropriate steps to ensure compliance by all officers and employees with the Department's policy regarding Effective Communication for D/HH persons.

B. **Dismissal.** Within ten (10) business days of the Effective Date, Plaintiff's counsel shall prepare a stipulation for dismissal with prejudice and provide it to Defendants' counsel. Upon receiving the stipulation signed by Defendants' counsel, Plaintiff's counsel shall file the stipulation within two (2) business days. The stipulation for dismissal shall expressly require that the Court retain jurisdiction for the purpose of enforcing this Agreement, and the proposed order shall expressly incorporate the terms of this Agreement.

C. **Enforcement.** Any disputes arising under this Agreement shall be

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 6 of 12*

communicated to the Parties' agents listed in section IV.J. before any legal action is taken. The Parties will cooperate in good faith to resolve any such disputes within a reasonable time. In the event any legal action is taken to enforce this Agreement in Court, unless the Parties agree otherwise, the prevailing party shall be entitled to reasonable attorneys' fees and costs relating to the enforcement action.

## III. RELEASE

### A. General Mutual Release and Waiver

1. By Bass: In consideration of the terms and provisions of this Agreement, Bass, for himself alone, and on behalf of himself and his representatives, affiliates, officers, members agents, descendants, dependents, heirs, executors, administrators, assigns, and successors, and each of them, hereby covenants not to sue and fully and forever relieves, releases and discharges the City and its predecessors, successors, assignees, representatives, affiliates, and partners and its and their respective elected officials, officers, directors, agents, employees, servants, executors, administrators, accountants, insurers, attorneys, and any and all other related individuals and entities (collectively, the "RELEASEES"), from

-- Any and all claims, debts, liabilities, demands, obligations, liens, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and costs, except as provided herein), damages, actions and causes of action, of whatever kind or nature, including, without limitation, declaratory or injunctive relief claim, statutory, civil or administrative claim, or any claim, arising out of facts, whether known or unknown, suspected or unsuspected, fixed or contingent, concealed or hidden (collectively referred to herein as "CLAIMS") now owned or held or at any time heretofore or hereafter owned or held as against said RELEASEES, arising out of or in any way connected with the claims set forth in the Action, or any other transactions or occurrences, or any loss, damage, or injury whatever, whether known or unknown, suspected or unsuspected, or concealed or hidden, resulting from any act or omission by or on the part of said RELEASEES, or any of them. The foregoing release shall include, without limitation:

-- Any claims for declaratory or injunctive relief based on of the allegations that were or could have been asserted in the Action under Title II of the Americans with Disabilities Act, Rehabilitation Act of 1973, 42 U.S.C. § 1983, §§ 52.1 and 54 of the California Civil Code, Government Code Section 11135 of the California Government Code, and the common law;

-- Any claims arising under federal or state laws which prohibit discrimination against persons with disabilities in the provision of benefits, programs, or activities of a public entity, including, without limitation, any claim under Title II of the Americans with Disabilities Act, Rehabilitation Act of 1973, 42 U.S.C. § 1983, §§ 52.1 and 54 of the

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 7 of 12*

California Civil Code, Government Code Section 11135 of the California Government Code, and the common law;

-- Any claims that were or could have been asserted in the Action, whether based on statute, regulation, contract, tort, or other legal or equitable theory of recovery.

In executing this Agreement and Release, Bass releases all Defendants and all claims. Apart from Bass, this release shall not prejudice any individual putative class member's right to bring a claim for damages against any defendant.

2.    By the City.  In consideration of the terms and provisions of this Agreement, the City, on behalf of itself and its elected officials, representatives, affiliates, officers, members agents, descendants, dependents, heirs, executors, administrators, assigns, and successors, and each of them, hereby covenants not to sue and fully and forever relieves, releases and discharges Bass and his predecessors, successors, assignees, representatives, affiliates, and partners and its and their respective officers, directors, agents, employees, servants, executors, administrators, accountants, insurers, attorneys, and any and all other related individuals and entities (collectively, the "RELEASEES"), from any and all claims, debts, liabilities, demands, obligations, liens, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, actions and causes of action, of whatever kind or nature, including, without limitation, any statutory, civil or administrative claim, or any claim, arising out of facts, whether known or unknown, suspected or unsuspected, fixed or contingent, concealed or hidden (collectively referred to herein as "CLAIMS") now owned or held or at any time heretofore or hereafter owned or held as against said RELEASEES, arising out of or in any way connected with the Action.

B.  **Release of Unknown Claims - Section 1542 of the Civil Code.**  The Parties expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, or any other federal or state statutory rights or rules, or principles of common law or equity, or those of any jurisdiction, government, or political subdivision, similar to Section 1542.  Neither Party may invoke the benefits of Section 1542 or any similar provision in order to prosecute or assert in any manner any claims that are released under this Agreement.  Section 1542 provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Each Party understands and acknowledges that he or it may hereafter discover claims or

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 8 of 12*

facts in addition to or different from those which he or it now knows or believes to exist with respect to the subject matter of this Agreement and which, if he or it had known or suspected at the time of executing this Agreement, may have materially affected his or its decision to execute this Agreement. Nevertheless, both Parties hereby waive any right, benefit, claim, demand, or cause of action that might arise as a result of such different or additional claims or facts. Both PARTIES acknowledge that he and it understands the significance and consequence of such a general release and such specific waiver of Section 1542.

C. **Knowing and Voluntary Entry into Agreement and Release.** The Parties, for themselves alone, represent and warrant that they have consulted with and have had the advice and counsel of attorneys and that they have entered into this Agreement and Release voluntarily, after independent investigation, and without fraud, duress, or undue influence.

D. **No Representations from Releases.** The Parties represent and acknowledge that in executing this Settlement Agreement and General Release, they do not rely upon, and have not relied upon, any representation or statement made by any of other party, past or present agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Settlement Agreement and General Release.

E. **Release Binding on Successors.** This Release shall be binding upon the Parties and upon their respective representatives, subsidiaries, partners, predecessors, successors, assigns, heirs, executors, and administrators, and shall inure to the benefit of the other parties, and each of them, and to their representatives, subsidiaries, partners, predecessors, successors, assigns, heirs, executors, and administrators. Nothing shall keep individual putative class members from bringing claims for damages.

F. **Non-Assignment of Claims.** Each Party represents and warrants that he or it is the owner of the CLAIMS released hereunder, that he or it has not assigned or transferred any portion of the CLAIMS released under this Agreement to any individual, firm, corporation or other entity, and that no other individual, firm, corporation or other entity has any lien, claim or interest in any such CLAIMS, including, but not limited to, any claim arising out of, related to or connected with the matters referenced in the recitals and the releases above. Each Party shall indemnify each of its RELEASEES, defend and hold them harmless from and against any claims arising out of, related to, or in connection with any such prior assignment or transfer, or any such purported assignment or transfer, of any CLAIMS or other matters released or assigned in this Agreement.

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 9 of 12*

## IV. ADDITIONAL TERMS AND ENFORCEMENT

A. **Attorneys' Fees and Costs.**  Within 60 days of the Effective Date, Defendants shall pay the amount of $75,000 to Plaintiff Bass' attorneys in the form of a check made payable to "Knauf Associates" as payment for Plaintiff's reasonable attorneys' fees and costs incurred in the Action.

B. **No Admission of Liability.**  This Agreement and Release shall not in any way be construed as an admission by any of the Defendants, the City, the Department, or any of its officers, agents or employees of any act or acts in violation of any State, federal or local statutes, or an admission as to any other claim of right whatsoever asserted or that could have been asserted by Bass, and the City specifically disclaims any liability for any violation asserted in the Action.  The Parties agree that nothing in this Agreement is intended to be nor will it be alleged to constitute evidence of or be an admission by the City, or any individual connected with it, their successors or assigns, except as may be necessary to prove the terms of this Agreement or to enforce the same.

C. **Governing Law.**  This Agreement and Release shall be interpreted and governed by and under the laws of the State of California.  This Agreement and Release shall be deemed and construed to have been jointly prepared by the Parties hereto.  The Parties hereto agree that the uncertainties or ambiguities, if any, existing in this Agreement and Release shall not be interpreted against any other party.

D. **Counterparts.**  This Agreement may be executed in one or more counterparts, and if so executed, each counterpart shall have the force and effect of an original.

E. **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties, and fully supersedes any and all prior agreements or understandings between the Parties pertaining to the subject matter hereof.

F. **Severability of Unenforceable Provisions.**  In the event that any of the provisions herein are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

G. **Good Faith Attempt to Resolve Disputes.**  In the event a dispute arises with respect to any party's compliance with the terms of this Agreement, the parties shall meet either in person or by telephone and endeavor to resolve the dispute in an amicable manner.  No action may be filed by any party in the absence of such a good faith attempt to resolve the dispute beforehand.

H. **Good Faith Enforcement.**  Pursuant to the terms of the dismissal order contemplated in paragraph II.B. above, any disagreement arising under this Agreement

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 10 of 12*

shall be enforced in the U.S. District Court for the Central District of California unless
otherwise agreed to by the Parties. The Court retains jurisdiction for a period of one (1)
year to enforce the terms of this Agreement and to issue all orders necessary to do so.
Plaintiff, by motion or order to show cause may seek to enforce the terms and conditions
contained herein.  In any enforcement action in which Plaintiff prevails in whole or in
part, the City shall pay Plaintiff's reasonable attorneys fees and costs for the enforcement
action.

   I. **Authority to Stipulate to this Settlement.**  Each signatory to this Agreement
certifies that it, he or she is fully authorized by the party it, he or she represents to enter
into the Agreement, to execute it on behalf of the party represented, and to legally bind
that party thereto.

   J. **Agents of Each Party.**  Any and all notices and information required to be
given to either party to this Agreement shall be sent to the following agents:

| Plaintiffs: | Christopher H. Knauf, Esq. |
|---|---|
| | Knauf Associates |
| | 2001 Wilshire Blvd, Suite 510 |
| | Santa Monica, CA 90403 |
| | Tel:  (310) 829-4250 |
| | Fax:  (310) 622-7263 |
| | Email:  ck@goodlaw.biz |
| | |
| City of Alhambra, | Joseph M. Montes, City Attorney |
| Alhambra Police Department, | Daphne M. Anneet, Esq. |
| | Burke, Williams & Sorensen, LLP |
| | 444 South Flower Street, Suite 2400 |
| | Los Angeles, CA  90071-2953 |
| | Tel:  213.236.0600 |
| | Fax:  213.236.2700 |
| | E-mail:  danneet@bwslaw.com |

   K. **Parties' Acknowledgment.** The undersigned acknowledge that they have
read this Settlement Agreement and General Release and that they fully know its
contents, and that s/he executes this Settlement Agreement and General Release and
makes the settlement provided for herein voluntarily and of his or her own free will.
Please read carefully.  This Settlement Agreement and General Release includes a release
of all known and unknown claims.

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 11 of 12*

IN WITNESS WHEREOF, the undersigned execute this Agreement and
Release and agree to be bound by its terms.

PLAINTIFF PATRICK BASS

Dated: _____        By: _____
                                   PATRICK BASS

                              DEFENDANT CITY OF ALHAMBRA

Dated: _9-3-10_____         By: _____

                              Title: ___C ITY  MAnger_____

                              DEFENDANT ALHAMBRA POLICE
                              DEPARTMENT

Dated: _9-2-10_____         By: _____

                              Title: _CHIEF OF POLICE_____

APPROVED AS TO FORM:

                              KNAUF ASSOCIATES
                              LAW OFFICE OF REBECCA THORNTON

Dated: _____        By: _____
                                   CHRISTOPHER H. KNAUF
                                   Attorneys for Plaintiff

                              BURKE, WILLIAMS & SORENSEN LLP

Dated: _____        By: _____
                                   DAPHNE ANNEET
                                   Attorneys for Defendants

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 12 of 12*

IN WITNESS WHEREOF, the undersigned execute this Agreement and
Release and agree to be bound by its terms.

PLAINTIFF PATRICK BASS

Dated: _____

By: _____
      PATRICK BASS

DEFENDANT CITY OF ALHAMBRA

Dated: _____

By: _____

Title: _____

DEFENDANTS CITY OF ALHAMBRA AND
ALHAMBRA POLICE DEPARTMENT

Dated: _____

By: _____

Title: _____

APPROVED AS TO FORM:

KNAUF ASSOCIATES
LAW OFFICE OF REBECCA THORNTON

Dated: _____

By: _____
      CHRISTOPHER H. KNAUF
      Attorneys for Plaintiff

BURKE, WILLIAMS & SORENSEN LLP

Dated: September 14, 2010

By: _____
      DAPHNE ANNEET
      Attorneys for Defendants

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 12 of 12*

IN WITNESS WHEREOF, the undersigned execute this Agreement and Release and agree to be bound by its terms.

PLAINTIFF PATRICK BASS

Dated: 8/12/10

By: _____
(PATRICK BASS)

DEFENDANT CITY OF ALHAMBRA

Dated: _____

By: _____

Title: _____

DEFENDANT ALHAMBRA POLICE DEPARTMENT

Dated: _____

By: _____

Title: _____

APPROVED AS TO FORM:

KNAUF ASSOCIATES
LAW OFFICE OF REBECCA THORNTON

Dated: 8/12/10

By: _____
CHRISTOPHER H. KNAUF
Attorneys for Plaintiff

BURKE, WILLIAMS & SORENSEN LLP

Dated: _____

By: _____
DAPHNE ANNEET
Attorneys for Defendants

*Settlement Agreement and General Release of All Claims*
*Bass v. City of Alhambra, et al*
*Page 12 of 12*

# ALHAMBRA POLICE DEPARTMENT
# INTERDEPARTMENT MEMORANDUM
## Department Order #10-18

DATE:      May 27, 2010

TO:        All Personnel

FROM:      Jim Hudson, Chief of Police

SUBJECT:   Communicating With People Who Are Deaf or Hard of Hearing

---

The Alhambra Police Department is adopting and implementing a policy regarding communicating with persons who are deaf or hard of hearing. This new policy will be included in the updated manual which is scheduled for publication at the June 23, 2010 rotation. The policy is now in effect, and the purpose of this Department Order is to publish the adopted policy. All managers and supervisors shall review the attached Policy with all of their staff.

**3.0.37      COMMUNICATING WITH PEOPLE WHO ARE DEAF OR HARD
OF HEARING**

It is the policy of the Alhambra Police Department to ensure that a consistently high level of service is provided to all community members, including those who are deaf or hard of hearing. APD has specific legal obligations under the Americans with Disabilities Act and the Rehabilitation Act to communicate effectively with people who are deaf or hard of hearing. To carry out these policies and legal obligations, APD instructs its officers and employees as follows:

- People who are deaf or hard of hearing are entitled to a level of service equivalent to that provided to other persons.

- APD will make every effort to ensure that its officers and employees communicate effectively with people who are deaf or hard of hearing.

- Effective communication with a person who is deaf or hard of hearing involved in an incident -- whether as a victim, witness, suspect, or arrestee -- is essential in ascertaining what actually occurred, the urgency of the matter, and type of situation.

- Various types of communication aids – known as "auxiliary aids and services" – are used to communicate with people who are deaf or hard of hearing. These include use of:

**EXHIBIT "A"**

- gestures or visual aids to supplement oral communications;

- a notepad and pen or pencil to exchange written notes;

- an assistive listening system or device to amplify sound for persons who are hard of hearing; or

- a qualified oral or sign language interpreter.

- The type of aid that will be required for effective communication will depend on the individual's usual method of communication, and the nature, importance, and duration of the communication at issue.

- In many circumstances, oral communication supplemented by gestures and visual aids or an exchange of written notes will be an effective means of communicating with people who are deaf or hard of hearing. In other circumstances, a qualified sign language or oral interpreter may be needed to communicate effectively with persons who are deaf or hard of hearing. A list of qualified service providers will be maintained in the Dispatch Center and the Watch Commander's Office. The more lengthy, complex, and important the communication, the more likely it is that a qualified interpreter will be required for effective communication. For example:

  - If there has been an incident and the officer is conducting witness interviews, a qualified sign language interpreter may be required to communicate effectively with someone whose primary means of communication is sign language. A qualified oral interpreter may be required to communicate effectively with someone who has been trained to read lips.

  - If a person is asking an officer for directions to a location, gestures or an exchange of written notes will likely be sufficient to communicate effectively.

- Primary consideration should be given to providing the type of communication aid or service requested by the individual. Officers should ask the person who is deaf or hard of hearing what type of auxiliary aid or service he or she needs. Officers should accommodate those expressed choices, unless:

  - The officer determines there is another equally effective way of communicating, given the circumstances, length, complexity, and importance of the communication, as well as the communication skills of the person who is deaf or hard of hearing; or

- ■ Doing so would fundamentally alter the nature of the law enforcement activity in question or would cause an undue administrative or financial burden (Only the Agency head or his or her designee may make this determination).

- The input of people who are deaf or hard of hearing who are involved in incidents is just as important to the law enforcement process as the input of others. Officers must not draw conclusions about incidents unless they fully understand -- and are understood by -- all those involved, including people who are deaf or hard of hearing.

- People who are deaf or hard of hearing must not be charged for the cost of an auxiliary aid or service needed for effective communication.

## ON-CALL INTERPRETIVE SERVICES

APD maintains a list of sign language and oral interpreting services that are available (on-call 24 hours per day). The list of pre-approved service providers will be maintained at Dispatch Center and the Watch Commander's Office. When it is determined that an interpreter is needed, the requesting officer will obtain approval from a supervisor before making the request for an interpreter. If approved, the supervisor will notify the Watch Commander and ensure that an entry is made in the Watch Commander's log.

A qualified sign language or oral interpreter is one who is able to:

- interpret effectively

- interpret accurately

- interpret impartially, both receptively and expressively, using any necessary specialized vocabulary

- sign to the deaf individual (or interpret orally to the person who speech reads) what is being said by the officer and be able to voice to the officer what is being signed or said by the deaf individual

- interpret in the language the deaf person uses (e.g., American Sign Language or Signed English) and must be familiar with law enforcement terms and phrases.

Because a qualified interpreter must be able to interpret impartially, a family member, child, or friend of the individual who is deaf may not be qualified to render the necessary interpretation because of factors such as professional, emotional, or personal involvement, or considerations of confidentiality. Additionally, although a "qualified" interpreter may be

certified, a certified interpreter is not necessarily "qualified," if he or she is not a good communications match for the deaf person (e.g., where the deaf person uses Signed English and the interpreter uses American Sign Language) or for the situation (e.g., where the interpreter is unfamiliar with law enforcement vocabulary).

## TTY AND RELAY SERVICES

In situations when a nondisabled person would have access to a telephone, officers must provide persons who are deaf or hard of hearing the opportunity to place calls using a teletypewriter (TTY, also known as a telecommunications device for deaf people, or TDD). Officers must also accept telephone calls placed by persons who are deaf or hard of hearing through the Telecommunications Relay Service.

## TOOLS AND TECHNIQUES FOR EFFECTIVE COMMUNICATION

Officers may utilize the following auxiliary aids, when available, to communicate effectively:

- gestures

- visual aids

- notepad and pen or pencil

- computer or typewriter

- assistive listening system or device

- teletypewriter (TTY)

- qualified oral or sign language interpreter.

Officers must review and have a working knowledge of the publication *Communicating with People Who Are Deaf or Hard of Hearing: ADA Guide for Law Enforcement Officers*. This publication is available online at: http://www.ada.gov/lawenfcomm.htm and will be distributed to officers during in-service training on this policy.

**U.S. Department of Justice**
Civil Rights Division
*Disability Rights Section*



# Communicating with People Who Are Deaf or Hard of Hearing

# ADA Guide for Law Enforcement Officers

As a law enforcement officer, you can expect to come into contact with people who are deaf or hard of hearing. It is estimated that up to nine percent of the population has some degree of hearing loss, and this percentage will increase as the population ages.

Under the Americans with Disabilities Act (ADA), people who are deaf or hard of hearing are entitled to the same services law enforcement provides to anyone else. They may not be excluded or segregated from services, be denied services, or otherwise be treated differently than other people. Law enforcement agencies must make efforts to ensure that their personnel communicate effectively with people whose disability affects hearing. This applies to both sworn and civilian personnel.



A driver who is deaf writes on a pad of paper to communicate with an officer.

Your agency has adopted a specific policy regarding communicating with people who are deaf or hard of hearing. It is important to become familiar with this policy.

## Requirements for Effective Communication

The ADA requires that . . .

• Law enforcement agencies must provide the communication aids and services needed to communicate effectively with people who are deaf or hard of hearing, except when a particular aid or service would result in an undue burden or a fundamental change in the nature of the law enforcement services being provided.

• Agencies must give primary consideration to providing the aid or service requested by the person with the hearing disability.

• Agencies cannot charge the person for the communication aids or services provided.

• Agencies do *not* have to provide personally prescribed devices such as hearing aids.

• When interpreters are needed, agencies must provide interpreters who can interpret effectively, accurately, and impartially.

• Only the head of the agency or his or her designee can make the determination that a particular aid or service would cause an undue burden or a fundamental change in the nature of the law enforcement services being provided.

Your agency's policy explains how to obtain interpreters or other communication aids and services when needed.

## Communicating with People Who are Deaf or Hard of Hearing

Officers may find a variety of communication aids and services useful in different situations.

• Speech supplemented by gestures and visual aids can be used in some cases.

• A pad and pencil, a word processor, or a typewriter can be used to exchange written notes.

• A teletypewriter (TTY, also known as a TDD) can be used to exchange written messages over the telephone.

• An assistive listening system or device to amplify sound can be used when speaking with a person who is hard of hearing.

• A sign language interpreter can be used when speaking with a person who knows sign language.

• An oral interpreter can be used when speaking with a person who has been trained to speech read (read lips). **Note:** Do not assume that speech reading will be effective in most situations. On average, only about one third of spoken words can be understood by speech reading.

The type of situation, as well as the individual's abilities, will determine which aid or service is needed to communicate effectively.

## Practical Suggestions for Communicating Effectively

• Before speaking, get the person's attention with a wave of the hand or a gentle tap on the shoulder.

• Face the person and do not turn away while speaking.

• Try to converse in a well-lit area.

• Do not cover your mouth or chew gum.

• If a person is wearing a hearing aid, do not assume the individual can hear you.

• Minimize background noise and other distractions whenever possible.

• When you are communicating orally, speak slowly and distinctly. Use gestures and facial expressions to reinforce what you are saying.

• Use visual aids when possible, such as pointing to printed information on a citation or other document.

• Remember that only about one third of spoken words can be understood by speech reading.

• When communicating by writing notes, keep in mind that some individuals who use sign language may lack good English reading and writing skills.

• If someone with a hearing disability cannot understand you, write a note to ask him or her what communication aid or service is needed.

• If a sign language interpreter is requested, be sure to ask *which* language the person uses. American Sign Language (ASL) and Signed English are the most common.

• When you are interviewing a witness or a suspect or engaging in any complex conversation with a person whose primary language is sign language, a qualified interpreter is usually needed to ensure effective communication.

• When using an interpreter, look at and speak directly to the deaf person, not to the interpreter.

• Talk at your normal rate, or slightly slower if you normally speak very fast.

• Only one person should speak at a time.

• Use short sentences and simple words.

• Do not use family members or children as interpreters. They may lack the vocabulary or the impartiality needed to interpret effectively.

## What Situations *Require* an Interpreter?

Generally, interpreter services are not required for simple transactions – such as checking a  license or giving directions to a location – or for urgent situations – such as responding to a violent crime in progress.

**Example**: An officer clocks a car on the highway going 15 miles per hour above the speed limit.  The driver, who is deaf, is pulled over and is issued a noncriminal citation. The individual is able to understand the reason for the citation because the officer points out relevant information printed on the citation or written by the officer.

**Example**: An officer responds to an aggravated battery call and upon arriving at the scene  observes a bleeding victim and an individual holding a weapon. Eyewitnesses observed the individual strike the victim. The individual with the weapon is deaf. Because the officer has probable cause to make a felony arrest without an interrogation, an interpreter is not necessary to carry out the arrest.

However, an interpreter may be needed in lengthy or complex transactions – such as interviewing a victim, witness, suspect, or arrestee – if the person being interviewed normally relies on sign language or speech reading to understand what others are saying.

**Example**: An officer responds to the scene of a domestic disturbance. The husband says the wife has been beating their

children and he has been trying to restrain her. The wife is deaf. The officer begins questioning her by writing notes, but her response indicates a lack of comprehension. She requests a sign language interpreter. In this situation an interpreter should be called. If the woman's behavior is threatening, the officer can make an arrest and call for an interpreter to be available later at the booking station.

It is inappropriate to ask a family member or companion to interpret in a situation like this because emotional ties may interfere with the ability to interpret impartially.

**Example**: An officer responds to the scene of a car accident where a man has been seriously injured. The man is conscious, but is unable to comprehend the officer's questions because he is deaf. A family member who is present begins interpreting what the officer is saying.

A family member or companion *may* be used to interpret in a case like this, where the parties are willing, the need for information is urgent, and the questions are basic and uncomplicated. However, in general, do not expect or demand that a deaf person provide his or her own interpreter. As a rule, when interpreter service is needed, it must be provided by the agency.

CONTACT INFORMATION:

A TTY is available in Dispatch to contact and receive phone calls from deaf or hard of hearing callers. In addition, a portable TTY unit will be kept in the Watch Commander's closet for use in the station and jail to provide telephone access to arrestees.

For non-TTY users, call California Relay at (800) 735-2922. This will connect the caller with a TTY operator for a three way conversation.

Additional contact information

(323) 550-4210    Regular business hours

(800) 633-8883    24 Hour non-business hours

**For further information on the Americans with Disabilities Act contact:**

**ADA Website**

http://www.ada.gov/

# TRAINING BULLETIN

## Alhambra Police Department - Chief Jim Hudson

**10-07**

### PROVISION OF AUXILIARY AIDS AND SERVICES FOR COMMUNICATING WITH PEOPLE WHO ARE DEAF OR HARD OF HEARING

In *Communicating With The Deaf Or Hard Of Hearing, Part Two*, it is stated that "Primary consideration should be given to providing the type of communication aid or service requested by the individual." This means that, if it is necessary to provide auxiliary aids or services (i.e., gestures, notepads, interpreters) in order to communicate with an individual who is deaf or hard of hearing, officers shall give utmost deference to the type of aid or service requested by a deaf or hard of hearing individual taking into consideration (1) the length and complexity of the interaction, (2) the communication needs of the deaf or hard of hearing individual, and (3) the availability of another equally effective way of communicating given the circumstances.

### INTERVIEWS

If, during an interview of a person who is deaf or hard of hearing, it becomes necessary to advise that person of their constitutional rights pursuant to Miranda v. Arizona, an officer will summon a qualified oral or sign language interpreter or utilize other appropriate auxiliary aids or services for that purpose and any further questioning.

### PLACING AN INTERPRETER REQUEST

If a deaf or hard of hearing individual requests an oral or sign language interpreter, and provision of such an interpreter is appropriate, officers shall make the request for an interpreter as soon as reasonably practicable after being requested to do so.

Under usual circumstances, an interpreter should be requested within fifteen (15) minutes after an interpreter is requested or deemed appropriate. If there exist exigent circumstances in which requesting an interpreter would endanger or jeopardize the heath and safety of the officer or any other individual, the request for an interpreter may be delayed, but, under usual circumstances, should be made within fifteen (15) minutes after the exigent circumstances no longer exist.

### USE OF FAMILY AND FRIENDS AS INTERPRETERS

It may be appropriate to rely on friends or family as sign language interpreters for simple transactions (such as most traffic stops, giving directions, or other minor contacts that require minimal interaction).

Distribution Date: 5/27/10 CA#651

**EXHIBIT "B"**

However, due to confidentiality, potential emotional involvement, and other factors, it is often inappropriate to utilize family members, friends, or associates as sign language interpreters. For example:

- It is inappropriate to rely on friends, family, or associates to interpret during a domestic violence investigation.

- Under such circumstances, officers shall advise individuals who are deaf or hard of hearing of the availability of sign language interpreters and refrain from utilizing family members, friends, or associates as sign language interpreters unless:

- The deaf or hard of hearing individual specifically requests that a family member, friend, and/or associate act as an interpreter, the person accompanying the person who is deaf or hard of hearing agrees, and relying on such an individual would be appropriate, or

- Exigent circumstances exist in which waiting for a sign language interpreter would endanger or jeopardize the health and safety of the officer or any other person; provided, however, that, if requested, an interpreter will be provided once exigent circumstances no longer exist.

### USE OF MINORS AS INTERPRETERS

If requested by a deaf or hard of hearing individual, it may be appropriate to rely on minors as sign language interpreters for simple transactions (such as most routine traffic stops, giving directions, or other minor contacts that require minimal interaction).

However, due to confidentiality, potential emotional involvement, and other factors, it is usually inappropriate to utilize minors as sign language interpreters even if specifically requested by the deaf or hard of hearing individual. For example:

- It is inappropriate to rely on minors to interpret during a domestic violence investigation even if specifically requested by the deaf or hard of hearing individual.

### TTY AND RELAY SERVICES

TTY allows deaf or hard of hearing individuals to place or receive calls utilizing a teletypewriter (TTY, also known as telecommunications device for deaf people, or TDD).

A TTY is available in Dispatch to contact and receive phone calls from deaf or hard of hearing callers. In addition, a portable TTY unit will be kept in the Watch Commander's closet for use in the station and jail to provide telephone access to arrestees.

For non-TTY users, call California Relay at (800) 735-2922. This will connect

Distribution Date:  5|27|10 CA #651

the caller with a TTY operator for a three way conversation.

Should there be a need for an in-person interpreter, there is an open purchase order with a local vendor who can have an in-person interpreter respond to the Department to provide sign language interpretation. Their contact information is:

(323) 550-4210     Regular business hours

(800) 633-8883     24 hour non-business hours

Any questions regarding ADA requirements, the Training Bulletin, and/or communicating effectively with individuals who are deaf or hard of hearing should be directed to the Alhambra Police Department Training Division.

*The information contained in this Training Bulletin was provided by the law firm of Burke, Williams and Sorenson specifically for the Alhambra Police Department.*

Distribution Date: 5/27/10  CA #651